FILED
2015 Jul-24  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAKESHIA TARVIN,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **V.** | ) | **CIVIL ACTION NO:** |
| | ) | |
| **DIRECTV,** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |
| | ) | **JURY DEMAND** |
| | ) | |

## CLASS ACTION COMPLAINT

## I.  INTRODUCTION

1.  This nationwide class action is brought by Lakeshia Tarvin on behalf of herself and a class of similarly situated females against DirecTV, a Fortune 500 company that believes it is legal and non-discriminatory to terminate female employees who fail to return to work the day after they give birth. At the same time, DirecTV refuses to allow new mothers to return to work after childbirth until they present a doctor's certification that they are medically fit to do so.

2.  As set forth in the factual allegations below, DirecTV thus places new mothers in a catch-22. If a female employee does not qualify for FMLA, for instance because she is in the first year of her employment or because, like the plaintiff,

she exhausted her leave or failed to work 1250 hours during the prior twelve months, then DirecTV will discipline her under its attendance policy, up to including terminating her employment, if she fails to return to work the very next day following a normal childbirth. However, because Defendant does not allow females to return to work without a doctor's release, and because many doctors will not provide a release allowing for a woman's immediate return to work after childbirth, the effect of Defendant's policies is that a class of women who become pregnant while unprotected by the FMLA, ADA, or state law will be disciplined under Defendant's attendance policy, up to and including termination, either because they fail to return immediately after childbirth or because Defendant will not allow them to return without a doctor's release.

3.    Defendant terminated Plaintiff's employment because she gave birth in violation of the Pregnancy Discrimination Act and Title VII. Plaintiff brings claims premised on disparate treatment and disparate impact theories of liability under Title VII. Defendant's policies are facially discriminatory to the extent they condition a new mother's return to work following normal childbirth on the employee's presentation of a doctor's release. To the extent Defendant contends such policies are facially neutral and not overtly

discriminatory against a class of female employees, they have a disparate impact on female employees such as the plaintiff who are unlikely to be able to obtain a doctor's release certifying them as medically fit to return immediately following the birth of their child.

4.   This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964, which was amended by the Civil Rights Act of 1991, and which is codified at 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII") and 42 U.S.C. § 1981a and the Pregnancy Discrimination Act. The plaintiff and the class she seeks to represent seek equitable relief, monetary relief and a jury trial of all issues triable to a jury.

## II.   JURISDICTION

5.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4), 2201 and 2202.  This is a suit authorized and instituted pursuant to Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. Section 2000e *et seq.*, as amended by the Civil Rights Act of 1991, and 42 U.S.C. Section 1981a.

6.   The plaintiff has fulfilled all conditions precedent to the institution of this

action under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended by the "Civil Rights Act of 1991," 42 U.S.C. § 2000e *et seq*.  The plaintiff timely filed her charge of discrimination within 180 days of the occurrence of the last discriminatory act. The plaintiff timely filed her lawsuit within 90 days of the receipt of her right-to-sue letter from the EEOC.

## II.   PARTIES

7.   The plaintiff, LaKeshia Tarvin, (hereinafter "Plaintiff") is a citizen of the United States, and a resident of the State of Alabama and is over nineteen (19) years of age.  Defendant hired Plaintiff in July 2001, and terminated Plaintiff on August 15, 2014.

8.   The plaintiff brings this action on her own behalf and on behalf of all others similarly-situated pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. The class that Plaintiff seeks to represent is composed of female employees and former employees who became pregnant and were not eligible for or afforded the protections of the FMLA, ADA, or state law, and who were disciplined under Defendant's attendance policy, terminated, or resigned in order to maintain "rehirable" status as a result of their failure to return to work immediately following childbirth or as a result of their failure to present a medical release allowing their return in accordance with Defendant's policy.

4

These persons are so numerous that joinder of all members is impractical. A common relief is sought. The interests of the class are adequately represented by the plaintiff. The defendant has acted or refused to act on grounds generally applicable to the class.

9.    The defendant, DirecTV, (hereinafter "Defendant") is an entity subject to suit under Title VII of the Act of Congress known as the "Civil Rights Act of 1964," 42 U.S.C. § 2000e *et seq.*, as amended by the "Civil Rights Act of 1991," and 42 U.S.C. § 1981a.

## III.    FACTS

10.   Plaintiff began working for West Telemarketing in July 2001 as a Customer Service Representative (CSR) when she was nineteen (19) years old.

11.   On October 24, 2004, Plaintiff, along with other employees, was offered an opportunity to transition her employment to Defendant DirecTV, and Plaintiff made that transition on October 26, 2004, keeping her same job title as a CSR.

12.   Plaintiff performed her job well during her thirteen years of employment with Defendant, received pay raises and was promoted to a CSR II.

13.   In July 2013, Plaintiff was pregnant, began to have complications with her pregnancy and promptly informed Defendant of those medical issues.

14.   Plaintiff's child was born on August 8, 2013, and she returned to work on

around September 16, 2013 without issue.

15.   Plaintiff soon became pregnant again, timely informed her employer of that pregnancy, and began having complications with that pregnancy in June 2014.

16.   Plaintiff went to her health care provider on June 24, 2014.

17.   On June 27, 2014, Plaintiff's health care provider submitted documentation to Defendant's third-party administrator, The Hartford Group, in connection with Plaintiff's request for medical leave due to complications with her pregnancy.

18.   Plaintiff's physician noted in the documentation submitted to Defendant that Plaintiff became disabled due to her pregnancy on June 24, 2014 and her expected return to work date was September 1, 2014.  In the comments section Plaintiff's physician stated that "Patient is at home at rest until she delivers – her expected delivery date is 7/20/2014.  She will need 6 weeks off."

19.   Plaintiff had not worked a sufficient number of hours in the previous twelve months to have FMLA coverage for her 2014 pregnancy, and was thus uncovered by the FMLA either immediately before or immediately after childbirth. However, prior to her child's birth she was entitled to protected leave under the American's with Disabilities Amendments Act of 2008 (ADAAA) because her health care provider had submitted documentation stating that she was disabled by pregnancy.

6

20.   Plaintiff's baby was born early, but in a normal childbirth, on July 5, 2014.

21.   Defendant's position statement to the EEOC states that "[o]n July 16, 2014, DirecTV learned that [Plaintiff] delivered her child without post-delivery complications on July 5, 2014. Therefore, her time off from July 6, 2014 forward did not qualify as a reasonable accommodation pursuant to the ADAAA and, as such was subject to DirecTV's attendance policy."

22.   Based on previous communications regarding Plaintiff's request for leave, Defendant was aware that Plaintiff believed herself to be on protected leave during this time between July 6, 2014 and August 13, 2014.

23.   However, between July 6, 2014 and August 13, 2014, Defendant failed to inform Plaintiff that it no longer considered her to be on protected leave as of July 6, 2014.

24.   On August 13, 2014, the HR Manager called Plaintiff and asked her if she was returning to work. When Plaintiff answered that she intended to return, Defendant told Plaintiff she needed to have a doctor's release to return to work.

25.   Defendant's Time Off For Birth or Adoption of a Child and Bonding Time policy states that prior to an employee returning to work the employee must provide a doctor's release with her return-to-work date.

26.   From the medical documentation stating that Plaintiff would need six weeks

off work following her pregnancy, Defendant was aware that Plaintiff's doctor would not release her to return to work the day after she gave birth and that her attendance infractions would thus begin occurring.

27. Similarly, Defendant is aware that most women will not be able to obtain a doctor's release approving them to return to work immediately after childbirth.

28. Plaintiff was not able to obtain a medical release from her physician prior to August 22, 2014.

29. The HR Manager called Plaintiff again on August 26, 2014, and told Plaintiff her employment was terminated pursuant to Defendant's attendance policy.

30. Defendant's attendance policy lists "Absence Incidents that may result in Corrective Disciplinary Action." These include "Leave Without Pay during any period (where the CSR does not have adequate PTO to cover a full or partial absence)." The policy states that for the first incident during a six-month period the employee will receive a "Documented Verbal Corrective Disciplinary Action." For the second incident in a six month period the policy states the employee will receive a "Written Corrective Disciplinary Action". And for the third incident in a six-month period the policy states "Review for termination."

31. According to Defendant's position statement to the EEOC in response to

8

Plaintiff's Charge of Discrimination, as of August 13, 2014, Plaintiff was no longer employed at Defendant because "all the leave she had taken after July 5, 2014 (the date her child was born) was not job-protected pursuant to the FMLA or an accommodation pursuant to the ADA."

32. Had Defendant informed Plaintiff that it did not consider her to be on ADAAA protected leave beginning the day after the birth of her child, Plaintiff would have returned to work as soon as Defendant required her to return had Defendant allowed her to return without first providing a doctor's release.

33. Defendant's intentional failure to communicate with Plaintiff that it no longer considered her to be on protected leave as of July 6, 2014 is an example of Defendant's practice of using its attendance policy as a pretext for terminating female employees because they have given birth.

34. Defendant's insistence on August 13, 2014 that Plaintiff must produce a doctor's authorization prior to returning to work, preventing Plaintiff from returning to work immediately even after Defendant had notified Plaintiff that it no longer considered her to be on protected leave, further shows Defendant's practice of using its attendance policy as a pretext for terminating female employees because they have given birth, and shows that its policies facially discriminate and/or have a disparate impact on females such as Plaintiff.

9

35. Defendant tried to persuade Plaintiff to resign her employment, and told the EEOC that Plaintiff "had two options: 1) resign her employment via letter, which would render her eligible for rehire if she wanted to return to DirecTV in the future; or 2) be terminated pursuant to the Attendance Policy for failure to return from leave."

36. Defendant could not promise that Plaintiff would be re-hired if she agreed to resign.

37. Had Defendant allowed Plaintiff to return to work, as opposed to having to resign and start anew, she would have soon accumulated the 1250 hours to be FMLA eligible which would have provided her with protected leave to care for her newborn should that become necessary.

38. However, if Plaintiff resigned and had to be rehired, she would have no accrued sick or vacation time, and she would have no possible FMLA protection until her newborn was year old.

39. When Plaintiff was unwilling to resign, Defendant terminated her because of her pregnancy and her female gender.

40. Defendant, by and through its agents, engaged in the practices complained of herein with malice and/or with reckless indifference to Plaintiff's federally protected rights.

10

41. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory and punitive damages is her only means of securing adequate relief.

42. Plaintiff is now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

## VI.   CLASS ACTION ALLEGATIONS

### A.    Class Definition and Common Questions of Law and Fact

43. The plaintiff is a member of the class she seeks to represent.  The class is defined as female employees and former employees who became pregnant and were not eligible for or not afforded the protections of the FMLA, ADA, or state law following childbirth, and who were disciplined under Defendant's attendance policy, terminated, or resigned in order to maintain "rehirable" status as a result of their failure to return to work immediately following childbirth or as a result of their failure to present a medical release allowing their return. The class period shall be from April 24, 2014 (180 days prior to the date on which Plaintiff filed her EEOC Charge) to the present in localities with no state or local agency that enforces state or local laws prohibiting gender discrimination, and from December 25, 2013 (300 days prior to the date

on which Plaintiff filed her EEOC Charge) to the present in localities with a
state or local agency that enforces state or local laws prohibiting gender
discrimination. Class members shall further include the heirs, executors,
administrators, representatives, agents and assigns of any such persons.

44. That class consists of females who have been subjected to one or more aspects
of the systemic gender discrimination described in the class claims portion of
this complaint. The prosecution of the claims of the named individual plaintiff
requires adjudication of the question common to the putative class: Has the
defendant engaged in systemic gender and/or pregnancy discrimination in a
manner made unlawful by the statutes under which this action is brought? The
claims of the named individual plaintiff are embedded in common questions
of law and fact because the defendant has intentionally discriminated against
a class of females employees and former employees, including Plaintiff, who
became pregnant and were not eligible for or not afforded the protections of
the FMLA, ADA, or state law following childbirth.

45. The defendant's policies and practices relevant to this action are determined at
the corporate level of the defendant's operations, and do not vary significantly
from one facility or geographical location to another. The employment
practices at issue in this complaint are not unique or limited to one location or

geographical area, but affect the named plaintiff and members of the class in the same manner throughout the defendant's operations.

### B.   Typicality of Relief Sought

46.   The relief necessary to remedy the claims of the plaintiff is the same relief that is necessary for the class. The named plaintiff seeks the following relief for her individual claims and those of the class: a declaratory judgment that the defendant has engaged in systemic gender discrimination by engaging in pregnancy discrimination; a permanent injunction against such continuing discrimination; a restructuring of the defendant's policies to prevent Defendant from perpetuating such discrimination in the future; back pay, reinstatement or front pay, punitive damages and other monetary and non-monetary remedies necessary to make the plaintiff and the class she seeks to represent whole from the defendant's past discrimination; and attorneys' fees and expenses.

### C.   Numerosity and Impracticability of Joinder

47.   The class that the named plaintiff seeks to represent is too numerous to make joinder practicable. The proposed class consists of female employees and former employees who became pregnant and were not eligible for or not afforded the protections of the FMLA, ADA, or state law, and who were disciplined under Defendant's attendance policy, were terminated, or resigned

in order to maintain "rehirable" status as a result of their failure to return to work immediately following childbirth or as a result of their failure to present a medical release allowing their return. The defendant's pattern and practice of gender discrimination also makes joinder impracticable by encouraging class members to resign their employment after childbirth rather than be terminated, thereby making it impractical and inefficient to identify many members of the class prior to a determination of the merits of the defendant's class-wide liability.

### D.   Adequacy of Representation

48.   The class representative's interest is coextensive with those of the class in that she seeks to remedy the defendant's discriminatory employment practices so that females will no longer suffer pregnancy discrimination. The class representative is able and willing to represent the class fairly and vigorously, as she pursues a goal common to the class through this action. The plaintiff's counsel is also qualified, experienced, and able to conduct the litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interest, experience and resources of the plaintiff and his counsel to litigate competently the individual and class claims of gender-based employment discrimination at

issue satisfy the adequacy of representation requirement under Fed. R. Civ. P. 23(a)(4).

### E.     Efficiency of Class Prosecution of Common Claims

49.   Certification of a class of similarly situated females is the most efficient and economical means of resolving the questions of law and fact that are common to the individual claims of the named plaintiff. The individual claims of the named plaintiff require resolution of the common question of whether the defendant has engaged in a systemic pattern of pregnancy discrimination. The named plaintiff seeks remedies to undo the adverse effects of such discrimination in their own lives and careers and to prevent continued gender discrimination in the future. In order to gain such relief for herself as well as for the putative class members, the named plaintiff must first establish the existence of systemic gender discrimination as the premise of the relief she seeks. Without class certification, the same evidence and issues would be subject to repeated re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the class of females affected by the common questions of law and fact is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for the plaintiff, the class

and the defendant. The named plaintiff's individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this complaint. Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

### F.      Requirements of Rule 23(b)(2)

50.     The defendant has acted on grounds generally applicable to the class by adopting and following systemic practices and procedures that effectuate pregnancy discrimination. The defendant's pregnancy discrimination is its standard operating procedure rather than a sporadic occurrence. The defendant has refused to act on grounds generally applicable to the class by refusing to adopt or follow policies which do not have disparate impact or otherwise systemically discriminate against females who are pregnant and give birth. The defendant's systemic discrimination and refusal to act on grounds that are not discriminatory have made appropriate final injunctive relief and declaratory relief with respect to the class as a whole.

51.     The injunctive relief and declaratory relief are the predominate reliefs sought because they are both the cumulation of the proof of the defendant's individual and class-wide liability at the end of Stage I of a bifurcated trial and the

16

essential predicate for the named plaintiff and class members' entitlement to monetary and non-monetary remedies at Stage II of such a trial. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the existence of systemic gender discrimination against males. Such relief is the factual and legal predicate for the named plaintiff and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by such systemic discrimination.

### G.   Alternatively Certification Is Sought Pursuant to Fed. R. Civ. P. 23(b)(3)

52.   The common issues of fact and law affecting the claims of the named plaintiff and the proposed class members, including, but not limited to, the common issues identified above, predominate over any issues affected only individual claims.

53.   A class action is superior to other available means for the fair and efficient adjudication of the claims of the named plaintiff and members of the proposed class.

54.   The cost of proving the defendant's pattern and practice of discrimination makes it impracticable for the named plaintiff and members of the proposed

class to control the prosecution of their claims individually.

**H.     Alternatively Certification is Sought Under a Combination of Fed. R. Civ. P. 23(b)(2) and 23(b)(3)**

55.   Plaintiff's claims for classwide equitable relief, including declaratory and injunctive relief, disparate impact and defendant's liability for the alleged pattern and practice of pregnancy discrimination are properly certified under Fed. R. Civ. P. 23(b)(2), and plaintiff's classwide damage claims are properly certified under Fed. R. Civ. P. 23(b)(3).

## VII.   CLASS CLAIMS

**A.     DEFENDANT'S PATTERN OR PRACTICE OF INTENTIONAL DISCRIMINATION AGAINST FEMALES ON THE BASIS OF PREGNANCY.**

56.   Plaintiff re-avers and incorporates paragraphs 1-50 above as if fully set forth herein.

57.   The defendant has engaged in a pattern and practice of discriminating against Plaintiff and a similarly situated class of female employees based on sex/pregnancy by disciplining them under Defendant's attendance policy, terminating them, or giving them the option to resign in lieu of discharge when they fail to return to work immediately after giving birth if they are not protected by the FMLA, ADA, or state law.

58.   Defendant's policy and practice of requiring a woman to provide a medical release before she may return to work following a normal childbirth facially discriminates against female members of the putative class, including the Plaintiff, and results in adverse employment consequences for class members.

59.   The defendant's application of its attendance policy and medical leave policies towards pregnant employees are intended or understood by Defendant to have a disparate impact on the individual female plaintiff and other female employees.  Such practices form a part of the defendant's overall pattern and practice of keeping female employees from becoming pregnant or remaining employed after the birth of their child.

60.   Defendant's articulated reason for terminating Plaintiff and other female employees after childbirth – violating the attendance policy – is not legitimate and a pretext for Defendant's pattern or practice of intentionally discriminating against a class of females on the basis of pregnancy.

61.   The systemic discrimination further adversely affects the plaintiff and the class she seeks to represent by promoting and reinforcing sexual stereotypes and sexual bias. In the absence of such sexual discrimination, the plaintiff and the class she seeks to represent would have a greater opportunity of employment and the opportunity to move into higher positions, which could then lead to

movement into supervisory and management positions with the defendant.

62.     Defendant's discriminatory policies, including its requirement that women provide a doctor's release in order to return to work immediately after giving birth so as to avoid being disciplined or losing their jobs under Defendant's attendance policy, are not valid, job related or justified by business necessity. There are alternative policies and procedures available to the defendant that do not facially discriminate against females or greater validity and job relatedness, but the defendant has refused to consider or to use such procedures.

63.     The discrimination set forth above was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff and the class she seeks to represent.

64.     Because of the defendant's discriminatory employment practices, the plaintiff and the class she seeks to represent have experienced harm, including the loss of compensation, wages, back and front pay, and other employment benefits.

65.     The plaintiff and the class she seeks to represent have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for backpay (plus interest), an injunction, a declaratory judgment, and punitive and/or nominal damages is their only means of securing adequate relief.

66.     The plaintiff and the class she seeks to represent are now suffering, and will continue to suffer, irreparable injury from the defendant's unlawful policies and

practices as set forth herein unless enjoined by this Court.

67.   On behalf of herself and the class she seeks to represent, Plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay (plus interest), a declaratory judgement, an injunction, punitive and/or nominal damages is their only means of securing adequate relief.

**B.   DEFENDANT'S POLICIES AND PRACTICES HAVE A DISPARATE IMPACT ON FEMALE EMPLOYEES.**

68.   Plaintiff re-avers and incorporates paragraphs 1-62 above as if fully set forth herein.

69.   Defendant's policy of requiring a doctor's release before an employee returns from time off for birth or adoption of a child and bonding time has a disparate impact on females, including the Plaintiff, and has resulted in the discipline, termination, or resignation in lieu of termination of Plaintiff and numerous female employees not protected by the ADA or FMLA who were unable to provide a medical certification that they are medically fit to return to work immediately following childbirth.

70.   Defendant's application of its attendance policy and its medical leave policy as described above is not valid, job related or justified by business necessity. There are alternative methods of dealing with pregnant employees after the

date of delivery that have less disparate impact on females or greater validity and job relatedness, but the defendant has refused to consider or to use such procedures.

71. The defendant's application of its attendance and medical leave policies towards pregnant employees perpetuates the defendant's policy and practice of keeping females from becoming pregnant or employed in its workforce after the date of delivery.

72. Because of the defendant's discriminatory employment practices, the plaintiff and the class she seeks to represent have experienced harm, including the loss of compensation, wages, back and front pay, and other employment benefits.

73. The plaintiff and the class she seeks to represent have no way to redress the wrongs alleged herein and this suit for back-pay (plus interest), a declaratory judgement, an injunction,  punitive and/or nominal damages is their only means of securing adequate relief.

74. The plaintiff and the class she seeks to represent are now suffering, and will continue to suffer, irreparable injury from the defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

75. On behalf of herself and the class she seeks to represent, Plaintiff seeks to redress the wrongs alleged herein and this suit for back-pay (plus interest), a

declaratory judgement, an injunction, punitive and/or nominal damages is their only means of securing adequate relief.

## VI.    Prayer for Relief

WHEREFORE, the plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1.    Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the defendant are violative of the rights of the plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e *et seq*.

2.    Grant Plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and at the defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e *et seq*.

3.    Enter an Order requiring the defendant to make Plaintiff whole by awarding her reinstatement, front pay, lost wages (plus interest), compensatory and punitive damages, post judgment interest, loss of benefits including retirement, pension, seniority and other benefits of employment.

4.    Plaintiff further prays for such other relief and benefits as the cause of justice

may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY**.

Respectfully submitted,


 /s/ Jon C. Goldfarb
Jon C. Goldfarb asb-5401-F58J
Daniel E. Arciniegas asb-7809-d67a
L. William Smith asb-8660-A61S
Counsel for Plaintiff

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB, LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

**DEFENDANT'S ADDRESS**:
DirecTV
c/o CSC Lawyers Incorporation Service Inc
150 South Perry Street
Montgomery, AL 36104